May it please the Court, Albert Hsiao for the petitioner, Shou-Ying Lin. Your Honors, this is a case of religious persecution and an asylum claim, and specifically that of belief in Falun Gong. And the facts of this case are substantially as follows, that the petitioner, while in China. Could I just ask you, because we do know the facts, in order to evaluate some of the findings of the IJ, we need to read the whole transcript. And so we're familiar with the facts, and it seemed to me there were a couple of adverse credibility findings that were pretty minor or speculative. But the one that seems to me gives me pause and one that you need to overcome relates to the grandma and whether, you know, she was bruised or tortured and that sort of thing. Because that was a very specific adverse credibility finding. So if you would address that, that would be helpful. Yes, Your Honor. In terms of the grandmother, what the IJ disputed was the actual cause of death of the grandmother. What was not disputed was that the grandmother was arrested for her practice of Falun Gong and that the grandmother was physically assaulted while in detention by the police for her practice of Falun Gong. Now, after she was released, she then passed away a short time thereafter. And there the evidence is inconclusive as to why she was beaten. Can I back you up a little bit? I think it was disputed whether she was beaten because the IJ points to the lack of physical evidence of any beating. Right. The medical report does not specifically state any physical abuse of that. So I don't know that it was undisputed that the IJ questioned it on that ground. Right. What we believe is relevant in this case, and this relates to the well-founded fear of future persecution and whether it is objectively reasonable for her to believe so, what is relevant here is that the grandmother was arrested and that it is objectively reasonable for the Petitioner in this case to fear the same thing were she to return to China. And it's inconclusive as to what is the actual cause of death and some of the other things. And I don't believe that this is particularly relevant because what the Petitioner fears, if she were to return, is that she would be arrested. And that is not in dispute in this case. Not necessarily what is the actual cause of death of her grandmother. But I guess the – in terms of the adverse credibility finding, that's certainly a central portion of it. But as I read the brief, you didn't appeal on that ground. Is that correct? No. That's not in the opening brief. No. I did mention it, Your Honor. I mentioned that I thought that the actual cause of death of the grandmother was irrelevant and that what was relevant was that she was arrested by police for her belief in Falun Gong. And that is what the Petitioner fears if she were to return. If we believe all the Petitioner's testimony, what we have is a story in which she and the grandmother are out probably in the backyard or perhaps went into the backyard when the – that one's a little unclear and I'm not sure it makes much difference – when the authorities show up. They both try to run away. She runs faster than the grandmother. The grandmother is apprehended. The grandmother is arrested. Grandmother is beaten. Grandmother dies. Grandmother has a preexisting heart condition which might have made her more susceptible to ill effects of a beating. The Petitioner escapes, never goes back. Correct. Assuming that that's a true story. Yes. Does that rise to the level of past persecution of this Petitioner such that she gets the advantage of the presumption? No, Your Honor. It does not. So we have – so we're – so we can hold for her only if we believe that she has a well-founded fear of persecution upon her return without the presumption. That's correct, Your Honor. And that is what we argued in our brief in that we conceded the point that there But what we argued is that under well-found fear of future persecution, the IJ essentially supported her contention with the State Department report in which she believed that, quote, core leaders are punished while practitioners, in this case the Petitioner who's a mere novice in the practice, would only receive some sort of administrative actions such as anti-falling-home classes. And that particular State Department report specifically states, quote, the mere belief in the discipline, even without public manifestation of its tenets, has been sufficient grounds for punishment ranging from loss of employment to imprisonment. And that the vast majority – although the vast majority of tens of thousands detained since 2000 have been released, thousands still remain. So that State Department report actually supports the Petitioner's position that if she would return, even though a mere novice in the belief, that she would be subject to persecution. And certainly the – her true belief in falling home was not questioned by the IJ or the BI or the government in this – in this matter. And – How likely is it – rather, I'll say it this way. How likely must it be that she will be subjected to severe punishment, not just some classes, but punishment that rises to the level of persecution? How likely must it be for her to satisfy the burden? Well, under the – the test of the well-found fear in which you need a subjectively genuine fear as well as an objectively reasonable fear, it is a substantial likelihood that that will occur. And I know the government – Then what will occur? That – that harm will occur. What harm? Well, as – Going to class? No. I don't believe that. No. I believe it should be some type of harm that rises to the level of persecution. In this case, certainly arrest and imprisonment, I believe, would rise to that level. And that is what happened to her grandmother, and that is what is supported by the State Department. But we have often before suggested that a single arrest or a single detention wouldn't rise to the level of persecution, correct? I'm sorry. A single arrest or a single detention does not necessarily rise to the level of persecution. I suppose that may be so, depending on the treatment, I suppose, that one receives during a single arrest. However, if the Petitioner were to have belief in Falun Gong and she were to be in China, if she were to be, say, arrested and then released, certainly she could be re-arrested again unless she specifically states, I don't believe in this anymore. I'm not going to do this anymore. If she were to continue on with this type of belief, there's certainly evidence that she would be arrested again. And we believe that that does rise to the level of persecution. And I know the government argues that there must be individualized evidence for such a finding. And they cite a Seventh Circuit case in IL v. Gonzales where the – I guess the And I don't believe that that is certainly – I don't believe that that is such in this case. I believe that the Petitioner does have individualized evidence in the fact that the authorities did come specifically to arrest her and that they certainly have knowledge that she has these beliefs. And as well, the Seventh Circuit specifically stated that an applicant need not have experienced persecution in order to have a well-founded fear, and that if an applicant practiced Falun Gong in China, she certainly would face substantial likelihood of persecution. So I do believe that even though that case is cited by government counsel in support of the contention that the mere belief is not enough, I believe they also – that the Seventh Circuit also specifically stated that the belief in Falun Gong would give rise to a substantial likelihood. Thank you. Thank you. Thank you. Good morning. May it please the Court. My name is Andrew Viviano, and I represent the United States today. Addressing first Petitioner's claim that the – she was found credible except for those few minor inconsistencies, that is simply not the case as the record reflects. The IJ said that she found the Respondent not credible, or Petitioner not credible. That case is Respondent at that point. Not simply that these aspects of the story weren't credible, but that overall she as a person was, but rather she as a person was not credible because of the inconsistency. Therefore, the elements that he alleges are not in dispute, we would – we would object to that and say they are, in fact, in dispute, that everything that the Petitioner testified to in her hearing is, in fact, in doubt because of those inconsistencies. Another issue was that these are minor inconsistencies, that they shouldn't really be counted because they don't go to the heart of the claim. But in fact, the only reason why they're minor is because the story is minor, if one were to look at it that way. This is not a case in which Petitioner was alleging a long beating or rape or torture and just simply forgot a minor detail about when that happened or where she was when that happened. The entire story is police coming to her door, she overhearing or seeing the police, and then fleeing. In that sense, where she was to see the police, and if she's inside or outside, if they could see her, and when she fled, is the essence and the entirety of that story. So in that case, that's why the Petitioner – that's why the I.J. found that in this case it did go to the heart of the asylum claim because it is the entire claim itself. But it doesn't matter. I mean, whether she was already in the backyard, whether she was in the house and ran out, the core of that story remains the same, as strong as it is or as weak as it is. I mean, any of those variations, it seems to me, doesn't make the story stronger or weaker. I disagree, Your Honor, in that she only purports to have glimpsed the police. It's the only way she would know the police were there. She had no firsthand knowledge otherwise. This is the story, that they came and she overheard them talking about wanting to arrest not only her grandmother, but also her. If the I.J. didn't believe that she was actually in the house because she was in the backyard, then it's possible that she could be elaborating or making up parts of that story about whether they were arresting her. If the I.J. can believe she got beaten, the rest of it doesn't matter. But in this case, when it's simply a matter of a very tangential potential or prospect – excuse me – possibility of persecution, these details are important to this story because that's all the story is. And in that case, in this case, it's not something that can be overlooked as a minor detail. In the same regard – Why is it important whether she was indoors or outdoors? You know, a lot was made of the possible translation difficulties here. Yeah. That's the problem. It's the timeline that most perplexed the immigration judge and most perplexed the government, in that originally she said she was in the backyard practicing and then went inside to – when she heard them coming. And then later on, she said she was already inside and her grandmother pushed her out the door when they were coming. Those two things are significant enough, where you were when you overheard them. And there's a lot of attempts to elaborate upon and fill in the blanks by Petitioner's counsel as far as what she meant or what she should have said. Those are not really relevant since they're not helpful. How is that – I mean, we know the grandmother went away, right? We know only what the Petitioner told us. Okay. And if she's not credible, we don't know that for sure. Well, but if she said the color of my walls was blue and it was pink, then she's lying about that. But we've said those kind of things are tangential and irrelevant. So aren't we really back to the grandma and not whether she's in the backyard or the front yard of the house? In a sense, yes, Your Honor. But it is the essential fact is whether the grandmother was taken away. The problem with her testimony is that she does not have documentation of that in any other regards besides her own testimony. If she had paperwork, an arrest warrant, a conviction, something that showed that happened, then her lack of clarity and explanation of how it happened wouldn't be that relevant. All we have is her story. And if her story is not solid, that really affects the underlying facts she's alleging. On top of that, she alleges that the grandmother was beaten and died from these beatings and presented evidence to corroborate that from medical records. And these records didn't show that she was beaten or that she died. In fact, they contradict some of those elements in that they stay extremely consistent. Kennedy. Well, you say there was no corroboration to the grandmother being arrested or in the hospital. Isn't that corroboration? It's corroboration that she was in the hospital, Your Honor. However, the hospital said there was no evidence. Kennedy. So I thought you were trying to illustrate that it made no difference if the grandmother was, in fact, in the hospital and those things that she said were at least in part were true. So there was corroboration about what had happened, was there not? Your Honor, I believe I said there was no evidence that she was arrested and beaten, as she alleged. There is, in fact, evidence that she was in the hospital. Kennedy. Yeah. However, the evidence in the hospital doesn't support the asylum claim and that doesn't show that she had anything other than a heart condition that was untreated for several years and high blood pressure that led to her death. That didn't even refer to her death, so. Yeah, all of that is true. I guess what troubles me is when you say that there's no corroboration for the fact that the grandmother was arrested and put in the hospital. Your Honor, I think my main point here is that there's at least substantial evidence for the IJ to determine that this was not enough to rely on to establish  credibility. There's certainly an argument to be made and a plausible explanation that could be created to explain all the testimony and to diminish certain things. But the IJ had the substantial evidence she needed to rule the – to make the adverse credibility finding. Would you assume for a moment that the IJ is going to be required to believe her story? So put us – put to one side the credibility issue. The IJ does two things. I mean, it's a sort of a belt and suspenders decision. He says, number one, I don't believe her, but number two, if I – even if I did believe her, this does not rise to the level of. Could you address that argument? Certainly. That was my next – the next issue to discuss. The – as Petitioner's counsel conceded, there is no past persecution here. Even if everything was taken as the gospel truth, nothing other than a close call occurred on the Petitioner's behalf. So we're left solely with a well-founded fear of future persecution. There's two elements of that. One is the subjective element, which is diminished by the IJ's finding of lack of credibility. But I'm asking you to assume credibility. And even assuming that is correct. The objective part, what really what the Petitioner is asking the Court to do is to establish a firm, bright-line, unrebuttable presumption that anyone who professes to believe in Falun Gong is automatically entitled to asylum in the United States. This is about the bare minimum someone could assert as far as their involvement in Falun Gong. Well, that's not quite her situation. If we believe her, her grandmother was chased, captured, beaten, and then her grandmother died. She fled. She went to the United States unsuccessfully. I'm assuming because this is what's necessary for the hypothetical. Unsuccessfully seeks asylum in the United States, comes back to China. So she's not just any old Falun Gong practitioner out there anonymous in this society. She's a very particular one. So you better address it on those facts. Even on those facts that she alleged, she still has not been personally persecuted and does not know what happened to her grandmother. It's speculation at that point. So on those facts, we still don't know what the potential consequences to her would be upon her return. The difficulty here is that the State Department report tells us all the whole range of what consequences could be for Falun Gong practitioners. And certainly at the upper end of that range is persecution, no question. But at the other end, one could argue it's not persecution. It's an administrative faction of classes. And as the Court has previously stated, it's an extreme concept, persecution. Not every form of discrimination or mistreatment or injustice that we'd find intolerable rises to that level. And to purely speculate is not the role of the IJ or of this Court, and it creates a rule that we would essentially take that speculation into the rule of law that every Falun Gong practitioner will be persecuted based on a State Department report which did not say that, which simply chronicled the variety of abuses. And there's a point there. You slid back into every Falun Gong practitioner rather than this Falun Gong practitioner with this history. But I understand your point that the State Department report gives us this spectrum, and she's got to persuade the IJ or maybe us that she's pretty far along toward the persecution end of the spectrum in terms of what she objectively could fear. Absolutely, Your Honor. That is my – the basic essence of the case is that with that broad spectrum, there needs to be some individualized evidence of where on that spectrum this Petitioner would fall. And given the fact that she has very little involvement in Falun Gong, as she stated, with her limited knowledge of the practice, not a long time in the practice, and not able to describe the practice, and not having a history of being in the past, she can't pinpoint that point, and it needs to be upheld at the substantial evidence standard. Thank you. Do you have some rebuttal time if you need it? Your Honor, additional questions. Thank you. I think I appreciate both the briefing and the arguments from both counsel. The case of Lynn v. Gonzales is submitted. We'd like next to hear argument in the case of United States v. Rodriguez. Thank you.
judges: Hug, McKeown, W. Fletcher